CHRISTOPHER L. SCILEPPI
LAW OFFICE OF CHRISTOPHER L. SCILEPPI, P.L.L.C.
115 W. Washington St.
Tucson, Arizona 85701
Telephone:    (520) 449-8446
Facsimile:    (520) 449-8447
Email:    info@scileppilaw.com
State Bar No: 021591
Attorney for Defendant Kaleb Jacob Valencia

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | Case No.: 22-CR-01320-JAS-3 |
| Plaintiff, | |
| vs. | SENTENCING MEMORANDUM |
| Kaleb Jacob Valencia, | |
| Defendant | |

COMES NOW, Defendant, Kaleb Jacob Valencia, by and through undersigned counsel and respectfully submits his Sentencing Memorandum and asks that the Court vary downward and impose a sentence of probation.

Dated this 10th of August 2023.

/s/ Christopher L. Scileppi
Christopher L. Scileppi
Attorney for Kaleb Jacob Valencia

Certificate of Service:  I certify that on this day, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Assistant United States Attorney
United States Attorney's Office
Tucson, Arizona

SENTENCING MEMORANDUM - 1

## I.    Facts underlying the offense

Mr. Valencia remembers clearly the day he was asked by people who were then his friends and asked to purchase firearms for them. Mr. Valencia and his friends were playing video games and drinking and the conversation away from the video game they were playing to firearms. Mr. Valencia agreed to purchase firearms for his friends and received small amounts of money in exchange for doing so. Over the course of roughly two years, Mr. Valencia purchased 17 guns on behalf of his friends. In total, Mr. Valencia profited less than $2,000.00.

## II.    Guidelines calculations

The Presentence Report accurately reports both the base offense level (14), the 4-level enhancement for the number of firearms, and the three-level reduction for acceptance of responsibility, making Mr. Velencia's total offense level 15. The Presentence Report also accurately reports Mr. Valencia's criminal history category (I). That produces a Guidelines of 18-24 months.

Pursuant to the plea agreement in this matter, the parties agree that Mr. Valencia's sentence shall not exceed 18 months.

## III.    Grounds for a variance

*Mr. Valencia's post-offense conduct*

As noted in the Presentence Report, as it relates to Mr. Valencia, this investigation came to a head on May 18, 2021 when agents served a search warrant at Mr. Valencia's residence. Mr. Valencia was not charged in this matter until more than a year later, and he was not arrested until a year and a half later. Now, we are two years and three months removed from Mr.

SENTENCING MEMORANDUM - 2

Valencia's participation in this offense, and it is clear that Mr. Valencia has changed his life for the better.

Mr. Valencia grew up in a rather religious household. In his late teens and early twenties, however, Mr. Valencia turned away from religion and in his own words "did his own thing." In recounting his arrest in this matter, Mr. Valencia conveyed that on his first night in CCA he had a conversation with his cellmate wherein his cellmate told him that "sometimes God acts to nudge us off the wrong path back onto the right one." Mr. Valencia internalized that thought and became committed to charting a new, better path, for himself.

The first thing Mr. Valencia did was quit drinking. As he explained to the Presentence Report writer, Mr. Valencia's has not had a sip of alcohol since his arrest. The reason for that is quite straightforward: Mr. Valencia recognized that his overuse of alcohol necessarily led to his surrounding himself with the wrong types of people and it led to him making a number of poor decisions, including his decision to get involved in this offense.

The second thing Mr. Valencia did was return to church. In speaking with Mr. Valencia in advance of sentencing, he explained that after his arrest, he began routinely attending church with his best friend and over the last nine months he has formed many new friendships, all of which have pushed him to do better and make positive changes.

Additionally, Mr. Valencia cut out negative influences. As noted in the Justification section of the Presentence Report, "the defendant reported sufficient means of income, and no dependents, which poses the question as to why he involved himself in this activity." After his arrest, Mr. Valenica realized that the people who he thought were his friends were the only ones who weren't there for him when times got tough. Mr. Valencia's family and his true friends shone through, and Mr. Valencia has drawn closer to them while completely distancing himself

SENTENCING MEMORANDUM - 3

from his past associations. Part and parcel to cutting out negative influences, Mr. Valencia has proactively taken steps to improve his lot in life. During the pendency of this matter, Mr. Valencia has been working, but he realized that if he wanted a better career path with greater earnings potential, he needed to make a change. As noted in the Presentence Report, shortly after his arrest, Mr. Valencia began taking classes towards obtaining his CDL and recently completed the program. With his CDL, Mr. Valencia will have consistent opportunities for continued employment and career advancement.

During his time under Pretrial Supervision, Mr. Valencia realized he was dealing with anxiety and he underwent a screening at CBI. After the screening, Mr. Valencia started seeing a psychiatrist regularly and was prescribed medication for an anxiety disorder and reports that he feels much better now than he did prior to addressing his mental health.

Lastly, and critically, Mr. Valencia has complied with every single condition of his pretrial release and has not had any negative law enforcement contact (unrelated to this matter) since the service of the search warrant in May 2021.

*Mr. Valencia's complete lack of criminal history*

Mr. Valencia's actions here were the only time in his life when he has ever been in any sort of trouble. He has no juvenile arrests or convictions. He has no adult arrests or convictions. His conduct here was a complete and total deviation from an otherwise law-abiding life.

As this Court knows, the revised Sentencing Guidelines, which take effect later this year, allow for a two-level reduction in offense level for individuals with 0 criminal history points. The reasoning behind this reduction is supported by significant empirical data. In making this revision, the Commission noted that offenders with zero criminal history points were significantly less likely to be rearrested than individuals with even one criminal history point

SENTENCING MEMORANDUM - 4

(26.8% to 42.3%). According to the Commission's report, this difference represents the largest difference in recidivism rates of any comparison of offenders within the same Criminal History Category. Mr. Valencia clearly fits into the new §4C1.1 definition of zero-point offenders. That would make him eligible for the two-level reduction, but for one exclusion which applies to him: the possession of a firearm in connection with the offense.

While this renders Mr. Valencia ineligible for a two-level decrease in his offense level (which would decrease his Guidelines by 6 months), the empirical data and research that went into the amendment to the Guidelines applies to Mr. Valencia. Everything about Mr. Valencia suggests this was aberrant criminal behavior which is unlikely to be repeated.

*Mr. Valencia's genuine remorse*

While many criminal defendants accept responsibility and express remorse for their conduct, Mr. Valencia has conveyed to undersigned counsel a deep sense of shame for his involvement in this conspiracy. He understands now that the only reason he was being used to purchase firearms was to get them to people who shouldn't be in possession of them. He has expressed to undersigned counsel and will assuredly express to the Court at sentencing that he is deeply and genuinely remorseful for his actions.

*The need for a custodial sentence here*

This offense is a serious offense insofar as it involved the purchasing of and ultimately the transfer of firearms to others. And Mr. Valencia absolutely appreciates that serious offenses beget serious consequences. While 18 U.S.C. §§ 3553(a)(2)(A)-(B) might support a custodial sentence, 18 U.S.C. §§ 3553(a)(1) and (a)(2)(C)-(D) do not.

But for his decision to engage in the conduct that gave rise to the charges here, everything about Mr. Valencia's life suggests that he is not a risk to reoffend. There is no need

SENTENCING MEMORANDUM - 5

to protect the public from future crimes of the defendant, and there is no educational or vocational training, medical care, or other correctional treatment that is available to Mr. Valencia in the Bureau of Prisons that would benefit him in any meaningful way.

**IV.    Conclusion and recommendation**

For all the foregoing reasons, Mr. Valencia respectfully requests that the Court impose a sentence of probation in this matter.

SENTENCING MEMORANDUM - 6