Jessica Turk
Law Offices of Jessica Turk
State Bar No. 024916
PO BOX 1363
Vail, AZ  85641
Telephone: (520) 404-6802
*Jessica.h.turk@gmail.com*
Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>   Plaintiff,<br><br>  vs.<br><br>Juan Diego Jimenez Melendrez,<br><br>   Defendant. | CR22-01320-TUC-JAS-LCK<br><br>**DEFENDANT'S SENTENCING MEMORANDUM** |

DEFENDANT'S SENTENCING
MEMORANDUM

Juan Diego Jimenez Melendrez is a young man facing sentencing for his role in aiding and abetting the straw purchase of a firearm in February of 2020.  Since his arrest a little over a year ago, at age 21, Mr. Melendrez has focused on setting priorities consistent with achieving his long-term goals.  This case has been an incredible lesson for Mr. Melendrez.  He now absolutely understands that the lure of easy money will always exist, but that the consequences that follow do make anything easy at all.

As will be explained below, the defense is requesting a sentence of either time-served or probation.  Such a sentence would punish Mr. Melendrez for his illegal conduct, as well as satisfy the factors listed within 18 U.S.C. § 3553(a), while being "sufficient, but

1

not greater than necessary," to meet the need for the sentence imposed. *See* § 3553(a).

## I.    The History and Characteristics of Mr. Melendrez

While Mr. Melendrez certainly takes responsibility for this crime, there is more to him than what he has pled to and that bear consideration in the Court's determination of an appropriate sentence.

### A.  *Mr. Melendrez's Performance on Pretrial Release*

During the roughly first two months of Mr. Melendrez's pretrial supervision period, he had some issues remembering to call the color line and, as a result, missed a handful of drug testing appointments.  *ECF Doc. No. 141*.  The issue was really one of organization.  Once Mr. Melendrez figured out how to incorporate the new task into his daily routine, he did not miss any other appointments.  *Id*.  Mr. Melendrez also took care of his lower court traffic matter and was even able to get his driver's license reinstated.  *Id*.

Mr. Melendrez has been supporting himself with construction work, but it has been intermittent as he has also been trying to take time to apply with other employers who provide better pay and training.  As he continued to research employment opportunities, he concluded that getting his G.E.D. may be an important part of increasing his employment prospects in the future.  Mr. Melendrez subsequently enrolled in Smart Schools, an online platform, to acquire his G.E.D.  *Id*.  He remains enrolled in Smart Schools today.  Mr. Melendrez did not previously have the luxury of completing high school because his family needed him to contribute financially by working full time instead.  *PSR, ¶ 60*.

Additionally, although Mr. Melendrez completed an assessment with Community Bridges and was found not need treatment, it is still a credit to Mr. Melendrez that he has

been able to steer clear of alcohol and prohibited substances nevertheless.  Mr. Melendrez's performance on pretrial release, particularly the strides he has made to further his education, demonstrates that he is more than able to follow this Court's orders and that he takes such responsibilities very seriously.  He is in a wonderful position to continue to thrive on probation/supervision.

> ### B.  Family Support

Mr. Melendrez has the unwavering support of his mother.  Despite not speaking English, she faithfully attended meetings between Mr. Melendrez and counsel.  She cried as Mr. Melendrez translated for her that he is facing possible prison time.  Mr. Melendrez and his mother have been through so much together.  They survived the serious domestic violence perpetrated by Mr. Melendrez's father and most recently, due to Mr. Melendrez's stepfather's infidelity, it is just Mr. Melendrez and his mother again supporting themselves and the siblings that are still minors.

The defense submits that Mr. Melendrez's family support is a positive 3553(a) factor because, just as his mother has been, she will continue to provide all of the love and support that Mr. Melendrez may need moving forward.  There is no doubt that she will do what she can to help him guard his freedom should this Court permit him to be subject supervision in lieu of incarceration.

> ### C. First Felony Conviction

The present offense is Mr. Melendrez's first felony conviction.  In fashioning an appropriate sentence for Mr. Melendrez, the Court must consider exactly what purpose further detention will serve.  "[R]esearch does not show that the aversive experience of

3

receiving correctional sanctions greatly inhibits subsequent criminal behavior.  Moreover, a significant portion of the evidence points in the opposite direction - such sanctions may increase the likelihood of recidivism."  Mark W. Lipsey and Francis T. Cullen, *The Effectiveness of Correctional Rehabilitation: A Review of Systematic Reviews* 3 Ann. Rev. L. Soc. Sci. 297, 302 (2007).

As to why this is so, scholars have identified numerous effects of incarceration, including how prison serves as a school for criminals; severs ties to family and community; diminishes employment options upon release; and reduces rather than increases the inmate's willingness or ability to conform to social norms.  *See generally* Martin H. Pritikin, *Is Prison Increasing Crime*, 2008 Wis. L. Rev. 1049, 1054-72 (cataloging eighteen criminogenic effects of incarceration); Lynne M. Vieraitis, Tomaslav V. Kovandzic, & Thomas B. Marvel, *The Criminogenic Effects of Imprisonment: Evidence from State Panel Data 1974-2002*, 6 Criminology & Pub. Pol'y 589, 614-16 (2007); *see also* USSC, Staff Discussion Paper, *Sentencing Options under the Guidelines* 19 (1996) (recognizing imprisonment has criminogenic effects including: contact with more serious offenders, disruption of legal employment, and weakening of family ties).

The defense submits that here, especially because of Mr. Melendrez's lack of prior felony convictions, the time has already served, as well as the continued threat of additional incarceration, a time-served or probation sentence will continue to be a powerful enough deterrent.  This is especially true because Mr. Melendrez's has never been to prison.  The pretrial custody time spent in this case marks the longest period that Mr. Melendrez has ever been incarcerated.  While the three days in custody may seem trivial, for Mr.

Melendrez it certainly was not.  It was a scary, uncertain and anxiety-ridden three days and certainly enough for him to vow to do whatever he could to never come back.

*D. Collateral Consequences*

Aside from the actual sentence that Mr. Melendrez will serve in this case, there are additional consequences that will continue to play out for the rest of his life.  Perhaps most significant for Mr. Melendrez, are his immigration consequences.  Undersigned counsel sought the assistance of the National Immigrant Justice Center ("NIJC") in order to evaluate the immigration consequences for Mr. Melendrez who is currently a Legal Permanent Resident.  According to NIJC, Mr. Melendrez's offense, because it involves fraud, of conviction will likely be considered a "crime involving moral turpitude."  While NIJC does not believe that the conviction will result in removability, the conviction will make shim inadmissible under 8 USC § 1182(a)(2)(A).  As a result, NIJC advised that Mr. Melendrez must avoid leaving the United States or risk never being able to come back.

For Mr. Melendrez and his family, the notion that he can never join other family members for birthdays and other special occasions in Mexico, has been really difficult to digest.  He knows that his own poor choices led to such a consequence, but it hasn't made it any easier for him to bear.  The defense hopes that this Court will consider the weight of this particular collateral consequence and find that, in addition to the other factors cited in this memorandum, the consequence of additional prison time is simply unnecessary.

Of course, there is also the additional collateral consequence of being a felon.  As a Senior Judge Block of the Eastern District of New York has so succinctly stated:

There is a broad range of collateral consequences that serve no useful function other

5

than to further punish criminal defendants after they have completed their court-imposed sentences. Many—under both federal and state law—attach automatically upon a defendant's conviction.

The effects of these collateral consequences can be devastating. Professor Michelle Alexander has explained that a, "[m]yriad of laws, rules, and regulations operate to discriminate against ex-offenders and effectively prevent their reintegration into the mainstream society and economy. These restrictions amount to a form of 'civi[l] death' and send then unequivocal message that 'they' are no longer part of 'us'." *United States v. Nesbeth*, 15-CR-18(FB) (citing Michelle Alexander, The New Jim Crow 142 (2010). There is no denying that this conviction will haunt Mr. Melendrez long after he completes his sentence.

## II.    A Minimally Sufficient Sentence

For the many reasons set forth in the previous sections, it simply does not follow that additional detention will serve the statutory purposes of punishment. A sentence of time served followed by supervision, on the other hand, is a productive sentence that makes sense in this case, particularly based on Mr. Melendrez's GED progress, positive performance on pretrial supervision, family support, and the many weighty collateral consequences of this felony conviction.

Congress clearly directed the Commission and the courts to use prison only if it served some purpose of sentencing other than rehabilitation, and to use probation in all other circumstances. *See* 28 U.S.C. § 994(k); 18 U.S.C. § 3582(a); S. Rep. No. 98-225 at 119, 176 (1983). Congress specifically noted "if an offense does not warrant imprisonment for some other purpose of sentencing, the committee would expect that such a defendant

would be placed on probation." *Id.* at 171 n. 531. *See also id.* at 92 (Committee "expects that in situations in which rehabilitation is the only appropriate purpose of sentencing, that purpose ordinarily may be best served by release on probation subject to certain conditions").

Mr. Melendrez has learned an incredibly difficult lesson. Nevertheless, since his release from custody, he has done everything that he can to prove to the Court that he takes the laws of this country and the orders of this Court very seriously. He does not need more prison time to deter him as the time he has already served as well as the threat of additional incarceration is enough for him to appreciate his own wrongdoings as well as the fragility of his freedom.

RESPECTFULLY SUBMITTED this 13th day of October, 2023.

*s/ Jessica Turk*
JESSICA TURK
Attorney for the Defendant

*The above signed does hereby certify that, on the above date, she electronically transmitted this document to the Clerk's Office using the CM/ECF System for filing and transmittal of a copy via email to:*

Brandon Bolling
Assistant United States Attorney

7